1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LINDA LEAH McGRAW,

               Plaintiff,

       v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

15-CV-3054-FVS

**ORDER**

     **THIS MATTER** comes before the Court based upon the parties' cross

motions for summary judgment.  Linda McGraw is represented by D. James Tree.

The Acting Commissioner is represented by Catherine Escobar.

     **BACKGROUND**

     During 2008, Linda McGraw applied for both Title II disability insurance

benefits and Title XVI supplemental security income.  42 U.S.C. §§ 401-434,

1381-1383f.  The Social Security Administration denied Ms. McGraw's claims, so

she exercised her right to an administrative hearing.  (TR 20.)  Not only did she

Order ~ 1

testify, but also she presented the opinions of several experts, including Natalie A. Luera, M.D., a treating physician.   The Administrative Law Judge acknowledged Ms. McGraw suffers from severe impairments.  However, the ALJ discounted both Ms. McGraw's testimony (TR 25-27) and Dr. Luera's pessimistic assessment.  (TR 28.)  Based, in large part, upon those two adverse determinations, the ALJ concluded Ms. McGraw is not disabled.  (TR 30.)

Ms. McGraw sought review by the Appeals Council.  When the latter rejected her request, she filed an action in federal court.  *See McGraw v. Astrue* (now *Colvin*), CV-12-3093-LRS.  On January 13, 2014, United States District Judge Lonny Suko reversed the ALJ's unfavorable ruling.  Among other things, he ruled the ALJ had failed to justify both her decision to discount Dr. Luera's assessment and her decision to discount Ms. McGraw's testimony.  Consequently, Judge Suko remanded Ms. McGraw's case to the Social Security Administration with instructions to "redo the Step Five analysis based on the exertional and non-exertional limitations set forth in Dr. Luera's report dated November 30, 2011 (Tr. at pp. 560-62), considering also the impact of migraines and headaches suffered by [Ms. McGraw]."  (Order of January 13, 2014, at 15.)

The Portland Office of Disability Adjudication Review ("ODAR") began preparing for a new administrative hearing.  (TR 836-37.)  For reasons that are not entirely clear, staff members became concerned Ms. McGraw was engaging

Order ~ 2

in activities that were inconsistent with her alleged disability. (TR 848.) Thus, on June 19, 2014, the ODAR asked the Cooperative Disability Investigations Unit ("CDIU") to assess the validity of Ms. McGraw's allegations. (TR 848.)

The referral to the CDIU was not the only significant development that occurred during the summer of 2014. In addition, the Social Security Administration arranged for Derek J. Leinenbach, M.D., to examine Ms. McGraw. Dr. Leinenbach conducted his examination on August 4, 2014. (TR 859.) At one point, he asked her to demonstrate the extent to which she can move her neck. Her response indicated substantial impairment. Dr. Leinenbach pressed on with his exam. As he did so, he watched her neck movements. In his opinion, she moved her neck through a wider range of motion at other points in the exam than she did when he formally examined her neck. This inconsistency caused him to question whether she was giving her best effort during the course of the examination. (TR 861.)

On August 8, 2014, the CDIU assigned Ms. McGraw's case to a detective. (TR 850.) As part of his investigation, he spoke to two independent witnesses, conducted surveillance of Ms. McGraw's residence, and interviewed her. The detective set forth the results of his investigation in a written report. He concluded by saying, "There were no obvious pain related behaviors . . . during

the interview.  At no time during the investigation did [Ms. McGraw] ever exhibit any kind of debilitating behavior."  (TR 854.)

On January 8, 2015, a different ALJ conducted a second administrative hearing.  (TR 566.)  One of the threshold issues was the scope of the hearing.  Ms. McGraw argued the ALJ was precluded from considering any new evidence; that, given the terms of Judge Suko's order, she was required to formulate Ms. McGraw's residual functional capacity in a manner that was consistent with Dr. Luera's assessment of November 30, 2011.  (TR 566.)  The ALJ disagreed.  She decided it was her "duty as an independent adjudicator to consider all of the evidence before [her] and weight it [sic] in accordance with the regulations."  *Id.* Consequently, she conducted a de novo analysis of the evidence.  Among other things, she considered both the results of Dr. Leinenbach's examination and the CDIU investigation.  On February 20, 2015, she issued an unfavorable decision.

Ms. McGraw again asked the Appeals Council to review the decision, which the Council declined to do.  Consequently, she filed a second action in federal court.  The matter now comes before the Court based upon cross motions for summary judgment.  Ms. McGraw argues the ALJ exceeded the scope of her authority by conducting a de novo examination of the evidence.  Ms. McGraw urges the Court to remand the case to the Social Security Administration with instructions to calculate and award benefits.  The Commissioner acknowledges

Order ~ 4

the ALJ's decision must be reversed because she did not follow Judge Suko's instructions.  However, the Commissioner objects to the relief requested by Ms. McGraw.  The Commissioner urges the Court to remand Ms. McGraw's case to the SSA for a third administrative hearing.

**RULE OF MANDATE**

Recently, the Ninth Circuit held the "law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir.2016).  The circuit court went on to observe:

> The rule of mandate is similar to, but broader than, the law of the case doctrine. . . .  The rule provides that any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it. . . .  The district court may, however, decide anything not foreclosed by the mandate. . . .  But the district court commits "jurisdictional error" if it takes actions that contradict the mandate.

825 F.3d at 567 (internal punctuation and citations omitted).  The Commissioner concedes the second ALJ violated the rule of mandate by failing to adhere to the instructions Judge Suko included in his order.  As a result, the Commissioner acknowledges the ALJ's unfavorable decision must be reversed.  The issue, then, is whether the Court should remand with instructions to calculate and award

Order ~ 5

benefits (Ms. McGraw's position) or whether the Court should remand for a new hearing on the merits (the Commissioner's position).

**LAW OF THE CASE**

Judge Suko directed the Clerk of the Court to enter judgment in accordance with his order of January 13, 2014. As neither party appealed the judgment, Judge Suko's rulings are the law of the case. Ordinarily, a court should not reconsider an issue it has resolved by issuance of a judgment. *See Stacy*, 825 F.3d at 567 (citation omitted). This is known, of course, as the law of the case doctrine. However, as the Ninth Circuit noted in *Stacy*, the doctrine is subject to exceptions. It "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." 825 F.3d at 567 (citation omitted).

Here, important developments occurred after Judge Suko issued his order. One was Dr. Leinenbach's examination. Another was the CDIU investigation. Allowing an ALJ to consider this evidence is likely to produce a more accurate assessment of Ms. McGraw's credibility. This, in turn, is likely to produce a more accurate determination with respect to whether she is disabled, which was the objective of Judge Suko's rulings. Where the objective of a judge's rulings likely will be advanced by considering newly developed evidence, it makes no sense to bar consideration of the evidence based upon the law of the case doctrine. Thus,

Order ~ 6

the Court will vacate Judge Suko's instructions to the Social Security Administration and allow an ALJ to consider Dr. Lenenbach's examination and the CDIU examination.

**CONCLUSION**

The Court is painfully aware Ms. McGraw's claims have been pending for years. Given the procedural history of this case, the Court considered remanding Ms. McGraw's claims to the SSA with instructions to calculate and award benefits. Doing so would bring the case to a close; something that needs to occur as soon as possible. However, both Ms. McGraw and the public are entitled to an accurate determination with respect to whether she is disabled. At this juncture, serious questions exist with respect to whether she is a reliable reporter. The public interest will not be served by ordering the SSA to ignore those questions. Consequently, the Court reluctantly will remand this case for a de novo administrative hearing.

One issue remains. Since there is going to be a third hearing, Ms. McGraw asks the Court to order the Commissioner to assign a new ALJ. She alleges the ALJ who presided over the second administrative hearing is biased. She sees bias in both the ALJ's unwillingness to follow Judge Suko's instructions and the ALJ's palpable frustration with her attorney at one point during the hearing.

Order ~ 7

Since an allegation of judicial bias is an extremely serious matter, the Court has carefully reviewed Ms. McGraw's contentions.  The Court agrees the ALJ's decision to conduct a de novo assessment of the evidence was erroneous.  However, it is well established an erroneous ruling almost never will warrant a judicial officer's removal.  *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  This case is no exception.  At the time of the second administrative hearing, the ALJ was presented with evidence that had not been available to Judge Suko.  Ms. McGraw's attorney wanted the ALJ to adhere strictly to Judge Suko's instructions and disregard the new evidence.  The ALJ did not think that course of action made sense.  She thought the ends of justice would best be served by examining the new evidence.  While the ALJ's decision is understandable, it was also erroneous.  She should not have exceeded the scope of Judge Suko's mandate.  Nevertheless, she appears to have acted in good faith.  There is nothing in the record indicating she was motivated by any improper consideration.  Thus, while she erred, her error does not reflect any form of disqualifying bias.

Nor can disqualifying bias be inferred from the fact the ALJ struck her desk in impatience.  As the Supreme Court explained in *Liteky*, judges remain "imperfect men and women" despite having been confirmed by the Senate.  510 U.S. at 555-56, 114 S.Ct. 1147.  In the stress of litigation, they sometimes express

Order ~ 8

"impatience, dissatisfaction, annoyance, and even anger." *Id.*, 114 S.Ct. 1147. Such expressions do not disqualify a judge from presiding over a case. "A judge's ordinary efforts at courtroom administration -- even a stern and short-tempered judge's ordinary efforts at courtroom administration -- remain immune." 510 U.S. at 556, 114 S.Ct. 1147. Here, the ALJ's rebuke of Ms. McGraw's attorney constitutes ordinary courtroom administration. It does not reflect disqualifying bias.

Thus, the Court rejects Ms. McGraw's allegation that the ALJ must be removed from the case. Having carefully reviewed the record, the Court is satisfied the ALJ would strive to render an unbiased decision in any future proceeding involving Ms. McGraw's attorney. However, the Court is not unsympathetic to Ms. McGraw's concerns. The Court can appreciate a person in her position would worry the ALJ already has made up her mind; that the outcome of a third hearing is virtually predetermined. Ms. McGraw's anxiety in that regard is not unreasonable. Although the Court is satisfied the ALJ is not in fact biased, an appearance of injustice exists. Consequently, the Court will grant Ms. McGraw's request for a new ALJ.

**IT IS HEREBY ORDERED**:

1. The plaintiff's "Motion to File Excess Pages" (**ECF No. 13**) is **granted**.

2. The plaintiff's summary judgment motion (**ECF No. 14**) is **denied**.

Order ~ 9

3. The defendant's summary judgment motion (**ECF No. 20**) is **granted**.

4. The ALJ's decision of February 20, 2015, is reversed.

5. This matter is remanded to the Social Security Administration for a de novo administrative hearing before a new ALJ, who shall utilize the five-step sequential evaluation process in order to determine whether Ms. McGraw is disabled.  The ALJ shall consider all admissible evidence in making that determination.

**IT IS SO ORDERED**.  The District Court Executive is hereby directed to file this order, enter judgment accordingly, furnish copies to counsel, and close the case.

**DATED** this 28th day of October, 2016.


s/Fred Van Sickle
FRED VAN SICKLE
Senior United States District Judge

Order ~ 10